UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES MURRAY,

                               Plaintiff,

                                                        9:03-CV-1010
       v.                                                     (DNH/GHL)

R. PALMER; S. GRIFFIN; M. TERRY; F. ENGLESE;
SERGEANT EDWARDS; K. BUMP; K.H. SMITH;
A. PAOLANO; TED NEJWITH,

                               Defendants.

---

APPEARANCES:                                OF COUNSEL:

JAMES MURRAY, 95-A-4417
  Plaintiff, *Pro Se*
Southport Correctional Facility
P.O. Box 2000
Pine City, New York  14871

HON. ELIOT L. SPITZER                 JAMES SEAMAN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
  Counsel for the Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## DECISION AND ORDER

      Plaintiff James Murray commenced this action on August 14, 2003.  Dkt. No. 1.  By

Order of United States District Judge David N. Hurd filed on August 20, 2003, Plaintiff was

directed to file an Amended Complaint.  Dkt. No. 2.  Plaintiff submitted an Amended Complaint

on January 27, 2004.  Dkt. No. 6.  The Amended Complaint asserted allegations of wrongdoing

against the Defendants regarding incidents that occurred at Great Meadow Correctional Facility

("Great Meadow").  *Id*.  Plaintiff alleged that certain Defendants assaulted him while other

Defendants failed to protect him from the alleged assault. Dkt. No. 6. Plaintiff also alleged that certain Defendants were deliberately indifferent to his serious medical needs. *Id*. By Order of District Judge Hurd filed February 5, 2004, Plaintiff's Amended Complaint was approved for filing and service was directed. Dkt. No. 7. On October 15, 2004, Defendants Bump, Edwards, Griffin, Nejwith, Palmer, Paolano, Smith and Terry submitted an Answer to the Amended Complaint. Dkt. No. 35.

Currently before the Court are two Motions to Compel Discovery filed by Plaintiff. Dkt. Nos. 52 and 54. Defendants have responded in opposition to both motions. Dkt. Nos. 56 and 58. Plaintiff has submitted a reply and a sur-reply. Dkt. Nos. 57 and 60.

In ruling on these discovery motions, the Court is mindful of the following general propositions concerning pretrial discovery. First, "actions alleging violations of § 1983 require especially generous discovery." *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) (Feldman, M.J.) (citing the late District Judge James T. Foley's decision in *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 128 [N.D.N.Y. 1984]). Second, as stated in *Obiajulu v. City of Rochester, Dep't of Law*,

> An objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded. The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of discovery rules found in the Federal Rules of Civil Procedure.

*Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996) (Feldman, M.J.) (citations omitted).

**I.    PROCEDURAL MATTERS**

The Court initially notes that Plaintiff has not demonstrated that he made a good faith effort to resolve discovery matters with Defendants' counsel **after** receiving Defendants' responses and before filing these motions to compel discovery. Rule 7.1(d)(1) of the Local Rules of the Northern District of New York ("Local Rules") requires that a party make good faith efforts to resolve any discovery dispute prior to filing any motion to compel discovery. The Pretrial Order that the Court previously issued in this action specifically advised Plaintiff of this Rule, and cautioned Plaintiff that any motion to compel filed in this action that was not accompanied by **documentation** that substantiated his efforts to resolve any discovery disputes prior to the filing of such motion would be denied. Dkt. No. 42 at 3.[1]

The Court could deny Plaintiff's motion solely for his failure to make good faith efforts to resolve discovery disputes. *See* Local Rule 7.1(d)(1). However, in light of Plaintiff's *pro se* status, and because Defendants have fully briefed their opposition to Plaintiff's motions to compel, the Court will address the merits of the motions as well.

While Defendants argue that Plaintiff's second motion to compel should be denied as it

---

[1]    Specifically, the Pretrial Order stated:

> **No motion to compel discovery shall be filed unless (a) the party has made good faith efforts to resolve the issues in dispute as directed in L.R. 7.1(d) and (b) the related discovery materials accompany the motion to compel. ANY MOTIONS NOT ACCOMPANIED BY DOCUMENTATION SHOWING THAT PARTY'S EFFORTS TO RESOLVE ANY DISCOVERY DISPUTES PRIOR TO FILING A MOTION TO COMPEL WILL BE DENIED FOR FAILURE TO COMPLY WITH THIS LOCAL RULE.**

Dkt. No. 42 at 3.

3

was **filed** after the expiration of the motion to compel filing deadline, *see* Dkt. No. 56 at ¶ 33, this is incorrect. As the Second Circuit has noted, a document filed by an inmate is deemed "filed" when it is delivered to prison officials. *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). Plaintiff's second motion was dated January 29, 2005. Dkt. No. 54 at 7. Plaintiff has also submitted a copy of an "Authorized Advance Request" dated January 31, 2005 which he contends demonstrates that prison officials had received his second motion to compel for mailing no later than January 31, 2005. Dkt. No. 57, Ex. A. Since the motion to compel filing deadline expired on January 31, 2005, *see* Dkt. No. 51, Plaintiff's motion is deemed timely filed.

## II.     FIRST MOTION TO COMPEL

Plaintiff's first motion to compel is actually a series of separate motions, each relating to a specific discovery request.[2] The Court will review each disputed request individually.

### A.     DOCS Employees Manual (June 1999 Edition) Relating to Use of Batons[3]

Plaintiff requested a copy of the DOCS Employees Manual (June 1999 edition) pertaining to the use of batons by correctional officers. Dkt. No. 52 at 1. After the first motion to compel was filed, Defendants provided Plaintiff with "the portion of the 6/99 Employee Manual pertaining to the use of force." Dkt. No. 56 at ¶ 16. Defendants have now substantially complied

---

[2]     Local Rule 26.2 provides in relevant part that "[a]ny motion pursuant to Fed. R. Civ. P. 37 shall be accompanied by the discovery materials to which the motion relates if those materials have not previously been filed with the Court." Plaintiff has not attached a copy of all of the discovery materials to which the motions relate along with his motions to compel as required by the Local Rules. Plaintiff has attached **some** of the discovery materials to his second motion to compel and other discovery materials to his reply. *See* Dkt. Nos. 54 and 57. Since the discovery materials are lengthy and not clearly referenced in Plaintiff's motions, the Court will address the discovery issues in the Order set forth in Plaintiff's motions.

[3]     DOCS refers in all instances to the New York State Department of Corrections.

with Plaintiff's request. This aspect of Plaintiff's motion is **denied** as moot.

### B.     DOCS Directive 4944

Plaintiff asserts that he was provided with a copy of the 2002 revision of Directive 4944, but in fact needed the April 7, 1999 version of the Directive. Dkt. No. 52 at 2. Defendants have since provided Plaintiff with a copy of the correct version of Directive 4944. *See* Dkt. No. 56 at ¶ 16. Therefore, this portion of Plaintiff's motion is also **denied** as moot.

### C.     Master Index

Plaintiff seeks the "master indexes kept by the Department of Correctional Services and by the Great Meadow Correctional Facility for August 17, 2000 to date." Dkt. No. 52 at 4. Defendants object to this request for two reasons. First, Plaintiff's actual discovery request made no request for a master index **for Great Meadow**, but only for DOCS (*see* Dkt. No. 54, third attachment, ¶¶ 15, 16). Second, Defendants provided Plaintiff with a copy of the master index for "DOCS directives" but objected to providing Plaintiff with "a master index of all DOCS records as overly broad and not reasonably likely to lead to the discovery of admissible evidence." Dkt. No. 56 at ¶ 18. Defendants characterize Plaintiff's request for a master index of all DOCS records as a "fishing expedition." *Id*. The Court finds that the Plaintiff has not established a specific need, as related to his action, for a copy of the master index **for all records held by DOCS**. Moreover, the Defendants have otherwise responded to Plaintiff's request for a copy of the master index of DOCS directives. This aspect of Plaintiff's motion is therefore **denied**.

### D.     Free Copy of Medical and Mental Health Records

Plaintiff wants the Defendants to provide him with a free copy of his medical and mental health records. Dkt. No. 52 at 6. Plaintiff claims that the medical release that he signed authorizing release of the records to the Defendants also entitled Plaintiff to receive free copies. *Id*. Defendants object, stating that the medical release did not indicate that Plaintiff would receive a free copy. Dkt. No. 56 at ¶ 20. Moreover, Defendants argue that "litigants must fund their own discovery" and, in any event, Plaintiff "is free to review his own medical records." The Court has reviewed the medical release executed by Plaintiff. *See* Dkt. No. 56, Ex. D. The release does not entitle Plaintiff to receive a free copy of his health care records.

Furthermore, neither Fed. R. Civ. P. 34, nor 28 U.S.C. § 1915, which governs proceedings *in forma pauperis*,[4] requires a defendant to assist in financing the cost of litigation incurred by a party bringing suit against it. *Williams v. Coughlin*, No. 95-CV-1737, slip op. at 2-3 (N.D.N.Y. May 31, 1996) (Pooler, J.) ("[C]opying and/or witness expenses are not included among the delineated expenses for which the Court can direct payment."); *Billups v. West*, No. 95 Civ. 1146, 1997 WL 100798, at *7 (S.D.N.Y. Mar. 6, 1997). Defendants' obligations under Rule 34 extend only to the requirement of providing such documents for inspection and, if requested, for photocopying at Plaintiff's expense. The Court therefore directs the Defendants to, **within 30 days** of the date of this Order, produce for Plaintiff's **inspection** at Plaintiff's current correctional facility a copy of Plaintiff's medical records, and any of Plaintiff's mental health records <u>that the facility maintains</u>. If Plaintiff wishes to obtain actual copies of any of the records

---

[4]     The Court notes that Plaintiff was granted *in forma pauperis* status under 28 U.S.C. § 1915, on July 9, 2004. Dkt. No. 13.

made available to him for inspection, he shall bear the cost of such copies.

### E. Oral Depositions of Defendants

Plaintiff seeks to take oral depositions of Defendants. Dkt. No. 52 at 10-14. However, he states that he could not afford to hire a court reporter and that, in any event, there is no need for one. *Id*. Rather, he proposes to record the depositions with a video-camera to be provided by his family. *Id*. He states that either his brother or a correctional employee (or court employee) could operate the video-camera. *Id*. If the video-camera were operated by a correctional employee (or court employee), Plaintiff states that he could pay for the cost of the video tapes only; he states that he could not afford to pay any other costs associated with a normal oral deposition. *Id*. Implicit in this proposal is an argument that either Defendants or the Court should pay those other costs. To accomplish the proposed depositions, Plaintiff requests that the Court order Defendants to enter a written stipulation, pursuant to Rule 29 of the Federal Rules of Civil Procedure, modifying the procedures ordinarily governing depositions. *Id*.

Defendants object for two reasons. Plaintiff never served a notice of deposition upon any of the Defendants **prior** to the expiration of the discovery deadline, therefore he is now barred from conducting such discovery.[5] Dkt. No. 56 at ¶ 24. Additionally, Defendants contend that Plaintiff's proposed deposition procedure does not comport with the Federal Rules of Civil Procedure. *Id*. at ¶ 25.

The Court agrees with both arguments advanced by Defendants. The Court would add only two points. First, Plaintiff has not shown cause for the rather extraordinary relief he requests--an order directing Defendants to enter into a written stipulation dispensing with the

---

[5] The discovery deadline expired on December 30, 2005. *See* Dkt. No. 51.

requirement that a deposition be preceded by the administration of an oath,[6] and shifting the cost of several depositions from Plaintiff to Defendants or the Court.[7] Nor has Plaintiff shown that such an order would even result in the production of evidence that is admissible during trial or any summary judgment motion (i.e., *sworn* deposition testimony that is free of any "chain of custody" concerns resulting from, for example, the videotaping being conducted by Plaintiff's family members).

Second, Plaintiff's argument that he should be excused from the requirements of having to pay the costs of a deposition because he is a "poor plaintiff" is unpersuasive. *See* Dkt. No. 52 at 12. Although Plaintiff has been granted *in forma pauperis* status under 28 U.S.C. § 1915, such status does not relieve him of the duty to pay his share of the cost of discovery (or somehow shift that cost to either Defendants or the Court). Rather, being granted *in forma pauperis* status affords an inmate only certain benefits, namely, the right to be able to "proceed" in a matter without *prepaying* certain "fees and costs."[8] These "fees and costs" do not include the costs of taking part in discovery. For example, a litigant proceeding *in forma pauperis* does not have a right to a waiver of (1) the cost of a deposition stenographer,[9] (2) the daily attendance fee and mileage allowance that must be presented to an opposing witness under Rule 45 of the Federal

---

[6] *See* Fed. R. Civ. P. 28(a), 30(b)(4).

[7] *See*, *e.g.*, Fed. R. Civ. P. 30(b)(2).

[8] *See* 28 U.S.C. § 1915.

[9] *See Benitez v. Choinski*, 05-CV-0633, 2006 WL 276975, at *2 (D. Conn. Feb. 2, 2006); *Tajeddini v. Gluch*, 942 F. Supp. 772, 782 (D. Conn. 1996); *Doe v. U.S.*, 112 F.R.D. 183, 185 (S.D.N.Y. 1986); *Toliver v. Community Action Com. to Help Economy, Inc.*, 613 F. Supp. 1070, 1072 (S.D.N.Y. 1985), *aff'd without opinion*, 800 F.2d 1128 (2d Cir. 1986), *cert. denied*, 479 U.S. 863 (1986); *Ebenhart v. Power*, 309 F. Supp. 660, 661 (S.D.N.Y. 1969).

Rules of Civil Procedure,[10] or (3) the copying cost of any deposition transcripts.[11]

Accordingly, the Court finds that Plaintiff's belated request for discovery should be **denied** for each of the above-stated reasons.

### F. Photograph of Plaintiff Taken upon Arrival at Great Meadow

Plaintiff asks for a copy of his picture taken upon arrival at Great Meadow to demonstrate that he was wearing eyeglasses upon his arrival. Dkt. No. 52 at 15. Defendants oppose the request, indicating that Plaintiff has not demonstrated the need for or relevance of the photograph. Dkt. No. 56 at ¶ 28. Plaintiff, however, states that the cuts that he received in his temple area will be consistent with the shape of the glasses he was wearing, demonstrating that he was kicked on both sides of the head while lying face down. Dkt. No. 52 at 15. In their response to the original discovery request, Defendants also asserted that any such photograph no longer exists because "[r]ecords reflecting inmate arrivals and internal inmate moves are discarded after three years." Dkt. No. 57, Ex. E, ¶ 1. Since the Court cannot require a party to

---

[10] *See* 28 U.S.C. 1915(d) ("Witnesses shall attend as in other cases . . . ."); N.D.N.Y. L.R. 5.4(a) ("The granting of an *in forma pauperis* application shall in no way relieve the party of the obligation to pay all other fees for which such party is responsible regarding such action, including, but not limited to, copying and/or witness fees."); *Malik v. Lavalley*, 994 F.2d 90, 90 (2d Cir. 1993) (affirming dismissal of complaint by Di Bianco, M.J., N.D.N.Y.); *Milton v. Buffalo Eng'g, P.C.*, 03-CV-0472, 2004 WL 1179336, at *1 (W.D.N.Y. May 27, 2004); *Fridman v. City of New York*, 195 F. Supp.2d 534, 535 (S.D.N.Y. 2002); *Smith v. Gracie Square Hosp.*, 96-CV-1327, 1997 WL 698183, at *2 (S.D.N.Y. Nov. 10, 1997); *Malsh v. Police Dep't of City of N.Y.*, 92-CV-2973, 1995 WL 296735, at *1 (S.D.N.Y. May 16, 1995); *Toliver v. Community Action Com. to Help Economy, Inc.*, 613 F. Supp. 1070, 1072 (S.D.N.Y. 1985), *aff'd without opinion*, 800 F.2d 1128 (2d Cir. 1986), *cert. denied*, 479 U.S. 863 (1986); *Gonzalez v. Fenner*, 128 F.R.D. 606, 607-608 (S.D.N.Y. 1989).

[11] *See* N.D.N.Y. L.R. 5.4(a) ("The granting of an *in forma pauperis* application shall in no way relieve the party of the obligation to pay all other fees for which such party is responsible regarding such action, including, but not limited to, copying and/or witness fees."); *Smith v. Buffalo Bd. of Educ.*, 96-CV-0229, 1997 WL 613255, at *2 (W.D.N.Y. Oct. 2, 1997).

produce something that does not exist, this aspect of Plaintiff's motion is **denied**.

### G.     List of All Persons at Great Meadow on August 17, 2000

Plaintiff asked for a list of all persons at Great Meadow on the date of his arrival--August 17, 2000--for purposes of identifying possible witnesses. Dkt. No. 52 at 16. The Court finds the request to be overly broad and agrees with the Defendants that it constitutes a "fishing expedition." Plaintiff's motion is **denied** in this regard. *See Messier v. Southbury Training School*, No. 3:94-CV-1706, 1998 WL 136170, at *6 (D.Conn. Jan. 30, 1998) (discovery "fishing expedition[s]" are "disfavored by courts") (citations omitted).

## III.    SECOND MOTION TO COMPEL

### A.     DOCS Directive 4943

Plaintiff alleges that Defendants refused to give him a copy of DOCS Directive 4943 (in effect on 8/17/00) which sets forth guidelines for hand-held video-taping. Dkt. No. 54 at 1. Defendants oppose the request, indicating that Plaintiff never included such a request in his discovery materials. Dkt. No. 56 at ¶ 38. Defendants also assert that "the directive is labeled confidential for security reasons, and cannot be released to inmates absent a court order." *Id*. Because of the confidential nature of the directive sought, and Plaintiff's failure to establish how DOC's video-taping policies are relevant to Plaintiff's underlying claims or likely to lead to the discovery of admissible evidence, this portion of Plaintiff's motion is **denied**.

### B.     DOCS Directive Relating to Pin-Pull Devices

Plaintiff asks for "the directives[,] . . . dictates[,] and data on the pin pull device[,] its register[,] and [everything] that will show and prove that[,] once the correction officers involved in [the] incident pulled [the] pin[,] . . . an alarm [indicating] that [an] officer [was] in distress

10

went out and caused . . . correction officers from all areas to converge/respond to [the] area in which [the] incident occurred." Dkt. No. 54 at 3.  Plaintiff indicates that he needs this information to show who arrived at the location of the alleged incident and the speed of the response by the correction officers.  *Id.*  Defendants oppose the request.  Defendants presume that Plaintiff is referring to the "pin" on radios carried by correction officers, which are "pulled" to call for emergency assistance.  Dkt. No. 56 at ¶ 39.  Defendants argue that any information produced in response to this request "is not material or necessary to any claim in plaintiff's Complaint.  There is no allegation that the pin was pulled in violation of his constitutional rights, and those who responded are identified in the Unusual Incident Report which has been provided."  *Id*.

While the Court is unable to determine, with complete clarity, Plaintiff's need for copies of the directives requested, since Defendants provide little justification for not providing copies of such directives, this aspect of Plaintiff's motion is **granted**.  The Defendants are directed to, **within 30 days**, produce to Plaintiff a copy of any DOCS Directives governing the use of emergency pull "pins" on correctional officer's radios as well as any Directives governing the response to receipt of an emergency call through the use of such "pins."

###        C.       Blueprints of the Prison

Plaintiff requests blueprints of Great Meadow so that he can "demonstrate/illustrate" where everyone was when the alleged incident occurred and where all of the correctional officers came from."  Dkt. No. 54 at 3-4.  Because Plaintiff has already been provided with a drawing of the area at which the alleged incident occurred, *see* Dkt. No. 56 at Ex. B, and given the security concerns with releasing to an inmate the blueprint of the entire facility, this request is **denied**.

11

D.   **Names and Addresses of Everyone at Great Meadow on August 17, 2000, and Photographs of Everyone at Great Meadow on August 17, 2000**

The Court finds these requests to be overly broad and constitute a "fishing expedition." Plaintiff's motion is **denied** as to these requests. *See Messier*, 1998 WL 136170, at *6 (discovery "fishing expedition[s]" are "disfavored by courts") (citations omitted).

E.   **Assistance in Serving Defendant Englese with Process**

Plaintiff seeks assistance in locating or serving Defendant Englese with service of process. Dkt. No. 54 at 6. Plaintiff indicates that Defendant Englese, a former Correctional Officer at Great Meadow, is retired. *Id*. Defendants oppose the request stating that the Attorney General's Office "does not represent Mr. Englese and has no obligation to provide assistance to [Plaintiff's] prosecution of this lawsuit." Dkt. No. 56 at ¶ 43.

The Court acknowledges that Defendants perhaps have little or no obligation to assist Plaintiff with the prosecution of his lawsuit and appreciates that Defendants would be understandably hesitant to provide an incarcerated inmate with the home address or any other similar personally identifiable information regarding a past corrections worker. The Court also appreciates, however, the dilemma facing the Plaintiff, who for lack of the information now sought has been unable to effectuate service of process upon that Defendant. In order to balance these competing concerns, the Court will request that the Attorney General, acting on behalf of the DOCS, make an effort to contact F. Englese through any information available to that agency, and determine whether they will be permitted to waive service on behalf of the Defendant and appear on his or her behalf. The Attorney General is directed to contact the Court **within thirty days** of the date of this order and advise as to whether or not his office will be authorized to

12

waive service and appear on behalf of that Defendant. In the event that such an authorization is not forthcoming, the Court will consider appropriate alternatives including, potentially, the requirement that the DOCS provide the information directly to the court, for use in arranging for service upon that Defendant by the United States Marshal's Service.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motions to compel (Dkt. Nos. 52 and 54) are **GRANTED** in part and **DENIED** in part, as set forth above in Parts II and III of this Order.  Defendants must serve supplemental responses and/or produce required documents within **THIRTY (30) DAYS** of the filing date of this Order.

Dated: August 29, 2006
      Syracuse, New York

_George H. Lowe_
George H. Lowe
United States Magistrate Judge