UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES MURRAY,

                                        Plaintiff,

                                                        9:03-CV-1010
v.                                                      (GTS/GHL)

R. PALMER; S. GRIFFIN; M. TERRY;
F. ENGLESE; SERGEANT EDWARDS;
K. BUMP; and K.H. SMITH;

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

JAMES MURRAY, 95-A-4417
  Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

BOSMAN LAW OFFICE                               AJ BOSMAN, ESQ.
  Standby *Pro Bono* Trial Counsel for Plaintiff
6599 Martin Street
Rome, NY 13440

HON. ANDREW M. CUOMO                            TIMOTHY MULVEY, ESQ.
Attorney General for the State of New York      JAMES SEAMAN, ESQ.
  Counsel for Defendants                        Assistant Attorneys General
The Capitol
Albany, NY 12224

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        The trial in this prisoner civil rights action, filed *pro se* by James Murray ("Plaintiff")

pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on

March 1, 2010, regarding the affirmative defense of seven employees of the New York State

Department of Correctional Services–R. Palmer, S. Griffin, M. Terry, F. Englese, Sergeant

Edwards, K. Bump, and K.H. Smith ("Defendants")–that Plaintiff failed to exhaust his available

administrative remedies, as required by the Prison Litigation Reform Act, before filing this

action on August 14, 2003.  At the hearing, documentary evidence was admitted, and testimony

was taken of Plaintiff as well as Defendants' witnesses (Darin Williams, Sally Reams, and

Jeffery Hale), whom Plaintiff was able to cross-examine through *pro bono* trial counsel.  At the

conclusion of the hearing, the undersigned indicated that a written decision would follow.  This

is that written decision.  For the reasons stated below, Plaintiff's Second Amended Complaint is

dismissed because of his failure to exhaust his available administrative remedies.

## I.    RELEVANT LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring

suit in federal court must first exhaust their available administrative remedies: "No action shall

be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e.  The PLRA was enacted "to reduce the quantity and improve the

quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address

complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S.

516, 524-25 (2002).  In this regard, exhaustion serves two major purposes.  First, it protects

"administrative agency authority" by giving the agency "an opportunity to correct its own

mistakes with respect to the programs it administers before it is haled into federal court, and it

discourages disregard of the agency's procedures."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much

more quickly and economically in proceedings before an agency than in litigation in federal

court," and (b) "even where a controversy survives administrative review, exhaustion of the

administrative procedure may produce a useful record for subsequent judicial consideration."

*Woodford*, 548 U.S. at 89.  "[T]he PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Correctional Services

("DOCS") has made available a well-established inmate grievance program.  7 N.Y.C.R.R. §

701.7.  Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-

step procedure for the filing of grievances.  7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[1]  First, an

inmate must file a complaint with the facility's IGP clerk within a certain number of days of the

alleged occurrence.[2]  If a grievance complaint form is not readily available, a complaint may be

submitted on plain paper.  A representative of the facility's inmate grievance resolution

committee ("IGRC") has a certain number of days from receipt of the grievance to informally

resolve the issue.  If there is no such informal resolution, then the full IGRC conducts a hearing

within a certain number of days of receipt of the grievance, and issues a written decision within a

certain number of days of the conclusion of the hearing.  Second, a grievant may appeal the

IGRC decision to the facility's superintendent within a certain number of days of receipt of the

---

[1]    *See also White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

[2]    The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

IGRC's written decision.  The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.  <u>Third</u>, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision.  CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees.  7 N.Y.C.R.R. § 701.8.  In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor.  The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review.  Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations.  An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure.  A similar "special" procedure is provided for claims of discrimination against an inmate.  7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards.  For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances.  If that application was denied, the inmate could

file a complaint complaining that the application was wrongfully denied.[3]  Moreover, any failure

by the IGRC or the superintendent to timely respond to a grievance or first-level appeal,

respectively, can–and must–be appealed to the next level, including CORC, to complete the

grievance process.[4]  There appears to be a conflict in case law regarding whether the IGRC's

---

[3]        *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009) (Suddaby, J.).

[4]        7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *see, e.g.,* DOCS Directive 4040 dated 8/22/03, ¶ VI.G. ("Absent [a time limit extension granted by the grievant], matters not decided within the time limits may be appealed to the next step.); *Pacheco v. Drown*, 06-CV-0020, 2010 WL 144400, at *19 & n.21 (N.D.N.Y. Jan. 11, 2010) (Suddaby, J.) ("It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process."), *accord, Torres v. Caron*, 08-CV-0416, 2009 WL 5216956, at *5 & n.28 (N.D.N.Y. Dec. 30, 2009) (Mordue, C.J.), *Benitez v. Hamm*, 04-CV-1159, 2009 WL 3486379, at *13 & n.34 (N.D.N.Y. Oct. 21, 2009) (Mordue, C.J.), *Ross v. Wood*, 05-CV-1112, 2009 WL 3199539, at *11 & n. 34 (N.D.N.Y. Sept. 30, 2009) (Scullin, J.), *Sheils v. Brannen*, 05-CV-0135, 2008 WL 4371776, at *6 & n.24 (N.D.N.Y. Sept. 18, 2008) (Kahn, J.), *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *15 & n.46 (N.D.N.Y. June 20, 2008) (Hurd, J.), *McCloud v. Tureglio*, 07-CV-0650, 2008 WL 17772305, at *10 & n.25 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J.), *Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *14 & n.114 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J.); *Nimmons v. Silver*, 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *11 & n. 66 (N.D.N.Y. June 22, 2006) (McAvoy, J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Walters v. Carpenter*, 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004) ("[M]atters not decided within the prescribed time limits must be appealed to the next level of review."); *Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of

nonresponse must be appealed to the superintendent where the plaintiff's grievance was never

assigned a grievance number.[5]   After carefully reviewing this case law, the Court finds that the

weight of authority appears to answer this question in the affirmative.[6]   The Court notes that, if

the plaintiff adequately describes, in his appeal to the superintendent, the substance of his

grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that

_____

relief open to him.").

     [5]     *Compare Johnson v. Tedford*, 04-CV-0632, 616 F. Supp.2d 321, 326 (N.D.N.Y.
2007) (Sharpe, J.) ("[W]hen a prisoner asserts a grievance to which there is no response, *and it is
not recorded or assigned a grievance number*, administrative remedies may be completely
exhausted, as there is nothing on record for the next administrative level to review.") [emphasis
in original, and citations omitted] *with Waters v. Schneider*, 01-CV-5217, 2002 WL 727025, at
*2 (S.D.N.Y. Apr. 23, 2002) (finding that, in order to exhaust his available administrative
remedies, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to
his grievance, of which no record existed).

     [6]     *See, e.g., Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *16, 18
(N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (finding
that, in order to exhaust his available administrative remedies with regard to his grievance of
August 30, 2000, plaintiff had to file an appeal with the superintendent from the IGRC's non-
response to that grievance, which included a failure to acknowledge the receipt of the grievance
and assign it a number); *Midalgo v. Bass*, 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y.
Sept. 26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing
that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never
received a response to his grievance of April 26, 2003, which was never assigned a grievance
number); *Collins v. Cunningham*, 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20,
2009) (rejecting plaintiff's argument that his administrative remedies were not available to him
where his grievance of March 20, 2004, was not assigned a grievance number); *Veloz v. New
York*, 339 F. Supp.2d 505, 515-16 (S.D.N.Y. 2004) (rejecting inmate's argument that the prison's
grievance procedure had been rendered unavailable to him by the practice of prison officials'
losing or destroying his grievances, because, *inter alia*, "there was no evidence whatsoever that
any of [plaintiff's] grievances were filed with a grievance clerk," and he should have "appeal[ed]
these claims to the next level once it became clear to him that a response to his initial filing was
not forthcoming"); *cf. Hernandez v. Coffey*, 582 F.3d 303, 305, 309, n.3 (2d Cir. 2009) ("Our
ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or
justification for failure to exhaust [which included an argument that the Inmate Grievance
Program was not available to him because, when he filed a grievance at the first stage of the
Program, he received no response and his grievance was not assigned a grievance number].").

there is something for the superintendent to review.

It is also important to note that DOCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

A.  For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B.  For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

C.  For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable."  7 N.Y.C.R.R. § 701.3(e)(1).  Similarly, "an individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable."  7 N.Y.C.R.R. § 701.3(e)(2).  However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable."  7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies.  *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Porter*, 534 U.S. at 524).  However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available

administrative remedies, as required by the PLRA.  *Hemphill v. State of New York*, 380 F.3d 680,

686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175.  First, "the court must ask whether

[the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the

prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were

available, "the court should . . . inquire as to whether [some or all of] the defendants may have

forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or

whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may

estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."

*Id.* [citations omitted].  Third, if the remedies were available and some of the defendants did not

forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should

consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's

failure to comply with the administrative procedural requirements."  *Id.* [citations and internal

quotations omitted].

    With regard to this third inquiry, the Court notes that, *under certain circumstances*, an

inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary

proceeding*.  *Giano v. Goord*, 380 F.3d 670, 678-79 (2d Cir. 2004); *Johnson v. Testman*, 380

F.3d 691, 697 (2d Cir. 2004).[7]  However, in essence, the circumstances in question include

---

    [7]    The Court recognizes that the Supreme Court's decision in *Woodford v. Ngo*, 548
U.S. 81 (2006), may have changed the law regarding possible exceptions to the exhaustion
requirement (and thus the possibility that exhaustion might occur through the disciplinary
process).  Specifically, in *Woodford*, the Supreme Court held that the PLRA required "proper"
exhaustion as a prerequisite to filing a section 1983 action in federal court.  *Woodford*, 548 U.S.
at 93.  "Proper" exhaustion means that the inmate must complete the administrative review
process *in accordance with the applicable procedural rules*, as a prerequisite to bringing suit in
federal court.  *Id.* at 88-103 (emphasis added).  It is unclear whether *Woodford* has overruled any
decisions that recognize "exceptions" to the exhaustion requirement.  Out of special solicitude to

instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing,[8] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim.[9]  Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCS regulations governing the grievability of his claim,[10] (b) the inmate was specifically informed

Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's *Giano-Testman* line of cases.

[8]         *Giano*, 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman*, 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia*, whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

[9]         *Testman*, 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia*. whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and opportunity to address complaints internally"); *Chavis v. Goord*, 00-CV-1418, 2007 WL 2903950, at *9 (N.D.N.Y. Oct. 1, 2007) (Kahn, J.) ("[T]o be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation.") [citation omitted].  The Court joins the above-described two requirements in the conjunctive because the Second Circuit has recognized that mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *See Macias v. Zenk*, No. 04-6131, 495 F.3d 37, at *43-44 (2d Cir. 2007) (recognizing that *Woodford v. Ngo*, 548 U.S. 81 [2006], overruled *Braham v. Casey*, 425 F.3d 177 [2d Cir. 2005], to the extent that *Braham* held that "informal complaints" would suffice to exhaust a claim).

[10]         *See, e.g.*, *Reynoso v. Swezey*, 423 F. Supp.2d 73, 75 (W.D.N.Y. 2006), *aff'd*, 238 F. App'x 660 (2d Cir. 2007) (unpublished order), *cert. denied*, 128 S. Ct. 1278 (2008); *Holland v. James*, 05-CV-5346, 2009 WL 691946, at *3 (S.D.N.Y. March 6, 2009); *Winston v. Woodward*, 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008); *cf. Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *5 & n.23 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (reciting this point of law in context of failure to appeal grievance determination to CORC).

that the claim in question was grievable,[11] (c) the inmate separately pursued the proper grievance process by filing a grievance with the IGRC,[12] (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion,[13] and/or (e) before and after the incident in question, the inmate pursued similar claims through filing a grievance with the IGRC.[14]  Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not

---

[11]     *See, e.g., Johnson v. Barney*, 04-CV-10204, 2007 WL 2597666, at *2 (S.D.N.Y. Aug. 30, 2007); *Reynoso*, 423 F. Supp.2d at 75-76.

[12]     *See, e.g., Reynoso*, 423 F. Supp.2d at 75 ("There is no evidence that plaintiff was confused or misled about the proper method for raising his claims. In fact, the record shows exactly the opposite: plaintiff did file a grievance about the incident. He simply failed to appeal the denial of that grievance to CORC."); *Tapp v. Kitchen*, 02-CV-6658, 2004 WL 2403827, at *9 (W.D.N.Y. Oct. 26, 2004) ("In the instant case, however, plaintiff does not and cannot claim to have believed that his only available remedy was to raise his complaint as part of his disciplinary hearing, since he also filed a grievance with the Inspector General, and also claims to have filed both an inmate grievance and a separate complaint with the facility superintendent."); *cf. Muniz*, 2007 WL 2027912, at *5 & n.23 ("Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC?").

[13]     *See, e.g., Petrusch v. Oliloushi*, 03-CV-6369, 2005 WL 2420352, at *5 (W.D.N.Y. Sept. 30, 2005) ("[A]s to his grievance, which is the subject of this lawsuit, plaintiff does not appear to be contending that he believed the Superintendent's denial constituted exhaustion, since by initially claiming that he did appeal to CORC, albeit without proof, he has demonstrated his knowledge of the correct procedure for exhaustion.").

[14]     *See, e.g., Benjamin v. Comm'r N.Y. State DOCS*, 02-CV-1703, 2007 WL 2319126, at *14 (S.D.N.Y. Aug. 10, 2007) ("Benjamin cannot claim that he believed that appealing his disciplinary proceeding was the only available remedy at his disposal in light of the numerous grievances he has filed during his incarceration at Green Haven [both before and after the incident in question].") *vacated in part on other grounds*, No. 07-3845, 293 F. App'x 69 (2d Cir. 2008).

subsequently investigate that claim,[15] and/or (b) the inmate did not appeal his disciplinary

hearing conviction.[16]

Finally, two points bear mentioning regarding exhaustion.  First, given that non-

exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner

has failed to exhaust his available administrative remedies.  *See, e.g., Sease v. Phillips*,

06-CV-3663, 2008 WL 2901966, *4 (S.D.N.Y. July 25, 2008).  However, once a defendant has

adduced reliable evidence that administrative remedies were available to Plaintiff and that

Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then

"counter" Defendants' assertion by showing exhaustion, unavailability, estoppel, or "special

_____

[15]     *See, e.g., Chavis*, 2007 WL 2903950, at *9 ("The focus of a disciplinary hearing
is upon the conduct of the inmate, and not that of prison officials. . . .  While the mention of a
constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his
substantive exhaustion requirement by virtue of his having notified prison officials of the nature
of his claims, he did not fulfill his procedural exhaustion requirement [under the circumstances
due to his] . . . mere utterance of his claims during the course of a disciplinary hearing . . . .
[T]here is nothing in the record to suggest that when the issues of interference with plaintiff's
religious free exercise rights or alleged retaliation for having voiced his concerns were in any
way investigated by prison officials.") [citations omitted].

[16]     *See, e.g., Colon v. Furlani*, 07-CV-6022, 2008 WL 5000521, at *2 (W.D.N.Y.
Nov. 19, 2008) ("Colon was found guilty of harassment based on a letter that he wrote to
defendant Bordinaro, concerning some of the events giving rise to his failure-to-protect claim,
but it does not appear that he appealed that disposition. . . .  While under some circumstances an
inmate may be able to satisfy the exhaustion requirement by appealing from a disciplinary
hearing decision . . . , plaintiff did not do so here, and this claim is therefore barred under the
PLRA.") [citations omitted]; *Cassano v. Powers*, 02-CV-6639, 2005 WL 1926013, at *5
(W.D.N.Y. Aug. 10, 2005) ("[E]ven assuming plaintiff believed that his proper recourse was to
raise [his] complaint at his disciplinary hearing, rather than using the Inmate Grievance Program,
he did not exhaust that process.  That is, plaintiff has not provided any evidence that he appealed
his Tier III hearing conviction.  Since plaintiff did not pursue even the disciplinary appeal
process, he can not have made submissions in the disciplinary process that were sufficient, in a
substantive sense, to exhaust his remedies under § 1997e(a).") [internal quotation marks and
citation omitted].

11

circumstances."[17]

Second, the Court recognizes that there is case law from within the Second Circuit

supporting the view that the exhaustion issue is one of fact, which should be determined by a

jury, rather than by the Court.[18]  However, there is also case law from within the Second Circuit

supporting the view that the exhaustion issue is one of law, which should be determined by the

Court, rather than by a jury.[19]  After carefully reviewing the case law, the Court finds that the

---

[17]    *See Hemphill,* 380 F.3d at 686 (describing the three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to "counter" defendants' contention that the prisoner failed to exhaust his available administrative remedies under the PLRA); *Verley v. Wright*, 02-CV-1182, 2007 WL 2822199, at *8 (S.D.N.Y. Sept. 27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact, 'actually available to him.'"); *Winston v. Woodward*, 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances'"); *see also Ramirez v. Martinez,* 04-CV-1034, 2009 WL 2496647, at *4 (M.D. Pa. Aug. 14, 2009) ("In order to effectively oppose defendants' exhaustion argument, the plaintiff has to make a showing in regard to each of his claims."); *Washington v. Proffit*, 04-CV-0671, 2005 WL 1176587, at *1 (W.D. Va. May 17, 2005) ("[I]t is plaintiff's duty, at an evidentiary hearing, "to establish by a preponderance of the evidence that he had exhausted his administrative remedies or that any defendant had hindered or prevented him from doing so within the period fixed by the Jail's procedures for filing a grievance.").

[18]    *See, e.g., Lunney v. Brureton*, 04-CV-2438, 2007 WL 1544629, at *10 n.4 (S.D.N.Y. May 29, 2007) ("There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury.  As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.'  Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court."); *Finch v. Servello*, 06-CV-1448, 2008 WL 4527758, at *8 n.5 (N.D.N.Y. Sept. 29, 2008) (McAvoy, J.) (citing *Lunney* and noting that "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court").

[19]    *See, e.g., Harrison v. Goord*, 07-CV-1806, 2009 WL 1605770, at *7 n.7 (S.D.N.Y. June 9, 2009) (recognizing that "[t]here is authority . . . for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide . . . ."); *Amador v. Superintend. of Dept. of Corr. Servs.*, 03-CV-0650, 2007 WL 4326747, at *5 n.7 (S.D.N.Y. Dec. 4, 2007) ("It is

latter case law–which includes cases from the Second Circuit and this District–outweighs the former case law.[20]  (The Court notes that the latter case law includes cases from the Second Circuit and this District.)[21]  More importantly, the Court finds that the latter cases are better

_____

unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury. . . .  [T]here is . . . case law . . . supporting the view that exhaustion should be determined by the court and not a jury."), *appeal pending*, No. 08-2079-pr (2d Cir. argued July 15, 2009).

[20]     *See, e.g., Mastroianni v. Reilly*, 602 F. Supp.2d 425, 438 (E.D.N.Y. 2009) (noting that the magistrate judge held an evidentiary hearing "on the issue of exhaustion"); *Sease v. Phillips*, 06-CV-3663, 2008 WL 2901966, *3 n.2 (S.D.N.Y. July 25, 2008) (finding that "the better approach is for the judge, and not the jury, to decide any contested issues of fact relating to the defense of failure to exhaust administrative remedies."); *Amador*, 2007 WL 4326747, at *5 n.7 ("[T]here is . . . case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury.  I find it proper that this issue be decided by the court."); *Enigwe v. Zenk*, 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept. 15, 2006) (finding that, at the summary judgment "stage of the proceedings, a genuine question of fact exists with respect to whether [plaintiff] should be excused from exhausting his administrative remedies with regard to claims relating to his confinement at MDC Brooklyn," and therefore "direct[ing] that a hearing be held" before a judge, to resolve this issue); *Dukes v. S.H.U. C.O. John Doe #1*, 03-CV-4639, 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering an "evidentiary hearing [before a judge] on the issue of whether prison officials failed to assign grievance numbers to [plaintiff]'s grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified [plaintiff]'s failure to appeal to the CORC"); *Mingues v. Nelson*, 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) ("The Court could have *sua sponte* dismiss[ed] this action as the record is unmistakeably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA. . . .  In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear."); *Roland v. Murphy,* 289 F. Supp.2d 321, 323 (E.D.N.Y. 2003) "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.") [internal quotation marks and citation omitted]; *Evans v. Jonathan*, 253 F. Supp.2d 505, 509 (W.D.N.Y. 2003) ("[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.").

[21]     *See, e.g.*, *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact.  They either are, or inevitably contain, questions of law.  Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of

reasoned than are the former cases.  In particular, the Court relies on the reasons articulated by

the Second Circuit in 1999: "Where administrative remedies are created by statute or regulation

affecting the governance of prisons, . . . the answer depends on the meaning of the relevant

statute or regulation."  *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).  The Court

relies also on the several reasons articulated by Judge Richard A. Posner in a recent Seventh

Circuit decision: most notably, the fact that the exhaustion-of-administrative-remedies inquiry

does not address the merits of, or deadlines governing, the plaintiff's claim but an issue of

"judicial traffic control" (i.e., what forum a dispute is to be resolved in), which is never an issue

for a jury but always an issue for a judge.  *See Pavey v. Conley*, 544 F.3d 739, 740-42 (7th Cir.

2008) (en banc), *cert. denied*, 129 S. Ct. 1620 (2009).  The Court notes that the First, Third,

Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits appear to agree with the ultimate

conclusion of the Second and Seventh Circuits that the exhaustion issue is properly decided by a

---

the administrative remedy is purely a question of law.  The answer depends on the meaning of
the relevant statute or regulation."), *accord*, *Mojias v. Johnson*, 351 F.3d 606, 608-11 (2d Cir.
2003) (citing relevant language from *Snider v. Melindez*, and later stating that a district court
could *sua sponte* dismiss a prisoner's civil rights complaint for failure to exhaust his available
administrative remedies if it gave him notice and an opportunity to be heard); *DeBlasio v.
Moriarty*, 05-CV-1143, Minute Entry (N.D.N.Y. filed Dec. 9, 2008) (McCurn, J.) (indicating
that judge held pre-trial evidentiary hearing on whether plaintiff had exhausted administrative
remedies before filing action); *Pierre v. County of Broome*, 05-CV-0332, 2007 WL 625978, at
*1 n.1 (N.D.N.Y. Feb. 23, 2007) (McAvoy, J.) (noting that "[t]he court held an evidentiary
hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted
administrative remedies"); *Hill v. Chanalor*, 419 F. Supp.2d 255, 257-59 (N.D.N.Y. March 8,
2006) (Kahn, J.) (*sua sponte* dismissing a prisoner's civil rights complaint, pretrial, for failure to
exhaust his available administrative remedies after it gave him notice and an opportunity to be
heard); *Raines v. Pickman*, 103 F. Supp.2d 552, 555 (N.D.N.Y. 2000) (Mordue, J.) ("[I]n order
for the Court to dismiss for failing to exhaust administrative remedies, the Court must be shown
that such a remedy exists for an inmate beating in the grievance context.  This is an issue of law
for the Court to determine.").

judge, not a jury.[22]

## II.   ANALYSIS

As an initial matter, Plaintiff argues that he exhausted his administrative remedies regarding the claims at issue in this action, by filing a grievance regarding those claims, and then appealing the non-response to that grievance all the way to CORC.  Because the Court rejects this argument based on the evidence adduced at the hearing, the Court proceeds to an analysis of the three-step exhaustion inquiry established by the Second Circuit.

### A.   Availability of Administrative Remedies

New York prison inmates are subject to an Inmate Grievance Program established by DOCS and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003), and *Snider v. Melindez*, 199 F.3d 108, 112-13 [2d Cir. 1999]).  There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff.  *Hemphill*, 380 F.3d at 687-88.  For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative

---

[22]      *See Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002); *Hill v. Smith,* 186 F. App'x 271, 273-74 (3d Cir. 2006); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682-83 (4th Cir. 2005); *Dillon v. Rogers,* No. 08-30419, 2010 WL 378306, at *7 (5th Cir. Feb. 4, 2010); *Taylor v. U.S.*, 161 F. App'x 483, 486 (6th Cir. 2005); *Larkins v. Wilkinson*, 172 F.3d 48, at *1 (6th Cir. 1998); *Husley v. Belken,* 57 F. App'x 281, 281 (8th Cir. 2003); *Ponder v. Wackenhut Corr. Corp.*, 23 F. App'x 631, 631-32 (8th Cir. 2002); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003); *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007); *Alloway v. Ward*, 188 F. App'x 663, 666 (6th Cir. 2006); *Bryant v. Rich*, 530 F.3d 1368, 1373-76 (11th Cir.), *cert. denied*, 129 S. Ct. 733 (2008).

remedies." *Hargrove v. Riley*, 04-CV-4587, 2007 WL 389003, at *8 (E.D.N.Y. Jan. 31, 2007)

(internal citations omitted).  When testing the availability of administrative remedies in the face

of claims that undue influence from prison workers has caused a plaintiff inmate to forego the

formal grievance process, courts employ an objective test, examining whether "a similarly

situated individual of ordinary firmness [would] have deemed them available." *Hemphill*,

380 F.3d at 688 (quotations and citations omitted); *see Hargrove*, 2007 WL 389003, at *8.

Here, after carefully considering the evidence submitted at the hearing in this action on

March 1, 2010, the Court finds that administrative remedies were "available" to Plaintiff during

the time in question.  The Court makes this finding for the following four reasons.

First, in his sworn Complaint (which has the force and effect of an affidavit), Plaintiff

stated, "Yes," in response to the question, "Is there a prisoner grievance procedure at this

facility."  (Dkt. No. 1, ¶ 4.a.)[23]  Second, both Darin Williams (the corrections officer in charge of

the special housing unit during the relevant time period) and Sally Reams (the Inmate grievance

program supervisor during the relevant time period) testified credibly, at the exhaustion hearing,

that there was a working grievance program at Great Meadow Correctional Facility during the

time in question.  (Hearing Tr. at 10, 12, 14-21, 40-54.)  Third, Plaintiff testified, at the

exhaustion hearing that, during this approximate time period (the August to November of 2000),

he filed at least three other grievances Great Meadow Correctional Facility, to which he received

responses from the inmate grievance clerk, the Superintendent, and CORC.  (*Id*. at 154, 157-58,

---

[23]     The Court notes that, in his Complaint, Plaintiff also swore that his "grievance
was denied."  (Dkt. No. 1, ¶ 4.b.ii.)  However, during the exhaustion hearing, Plaintiff testified
that he never received a response to his grievance from any member of DOCS.

169-70; *see also* Hearing Exs. D-4, D-5, P-8, P-13, P-14.)[24]  Fourth, the Court finds the relevant

portions of Plaintiff's hearing testimony regarding the grievance at issue in this action to be

incredible due to various omissions and inconsistencies in that testimony, and his demeanor

during the hearing.  (*Id*. at 127-34.)[25]

## B.    Estoppel

After carefully considering the evidence submitted at the hearing in this action on March

1, 2010, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion

------

[24]    In addition, the documentary evidence adduced at the hearing establishes that, in
actuality, Plaintiff filed ten other grievances during this time period (and several appeals from
the denials of those grievances.  The first of these grievances (Grievance Number GM-30651-
00), filed on August 25, 2000, regarded Plaintiff's request for medications.  (Hearing Exs. D-4,
D-5.)  The second of these grievances (Grievance Number GM-30691-00), filed on September 1,
2000, regarded Plaintiff's request for copies.  (Hearing Ex. D-4.)  The third of these grievances
(Grievance Number GM-30729-00), filed on September 11, 2000, regarded the use of full
restrains against Plaintiff.  (*Id*.; *see also* Hearing Ex. P-14.)  The fourth of these grievances, filed
on October 19, 2000 (Grievance Number GM-30901-00), regarded Plaintiff's request for the
repair of his cell sink.  (Hearing Exs. D-4, D-5.)  The fifth of these grievances (Grievance
Number GM-30901-00), also filed on October 19, 2000, regarded Plaintiff's request for the clean
up of his cell.  (Hearing Ex. D-4.)  The sixth of these grievances (Grievance Number GM-31040-
00), filed on November 17, 2000, regarded the review of records.  (*Id*.)  The seventh of these
grievances (Grievance Number GM-31041-00), also filed on November 17, 2000, regarded
Plaintiff's request for medical attention.  (*Id*.; see also Hearing Ex. P-13)  The eighth of these
grievances (Grievance Number GM-31048-00), filed on November 20, 2000, regarded the
rotation of books.  (Hearing Ex. D-14)  The ninth of these grievances (Grievance Number GM-
31040-00), filed on November 27, 2000, regarded the review of records (and was consolidated
with his earlier grievance on the same subject).  (*Id*.)  The tenth of these grievances (Grievance
Number GM-31070-00), filed on November 27, 2000, regarded Plaintiff's eyeglasses.  (*Id*.)

[25]    For example, Plaintiff was unable to identify the corrections officers to whom he
handed his grievance and appeals for mailing.  (*Id*. at 127-34.)  Moreover, Plaintiff did not
convincingly explain why the grievance and appeals at issue in this action did not make it
through the mailing process, while his numerous other grievances and appeals did make it
through the mailing process.  (*Id*. at 154-171.)  In addition, Plaintiff acknowledged that it was his
belief, during this time period, that an inmate was not required to exhaust his administrative
remedies in matters involving the use of excessive force; yet, according to Plaintiff, he decided
to exhaust his administrative remedies on his excessive force claim anyway.  (*Id*. at 148-49.)

by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies.  For example, Defendants' Answer timely asserted this affirmative defense.  (Dkt. No. 35, ¶ 17.)  Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant*s in any way interfered with Plaintiff's ability to file grievances during the time in question.  (Hearing Tr. at 127-34, 157-58, 169-70.)  Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.[26]

---

[26]     *See Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance–that he was not given the manual on how to grieve–was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions*, have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.") [emphasis in original]; *Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J. adopting Report-Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation "that [he] was inhibited (through non-responsiveness) by [] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers . . . fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr. 24, 2006) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any Defendant . . . inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter."); *cf. Warren v. Purcell*, 03-CV-8736, 2004 WL 1970642, at *6 (S.D.N.Y. Sept. 3, 2004) (finding that conflicting statements [offered by a non-party]-that the prisoner needed to refile [his grievance] and that the prisoner should await the results of DOCS's investigation-estopped the defendants from relying on the defense on non-exhaustion, or "[a]lternatively, . . . provided . . . a 'special circumstance' under which the plaintiff's failure to pursue the appellate procedures specified in the IGP was amply justified."); *Brown v. Koenigsmann*, 01-CV-10013, 2005 WL 1925649, at *1-2 (S.D.N.Y. Aug. 10, 2005)

C.      **Special Circumstances**

There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, including (but not limited to) the following:

(1) The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals–which effectively rendered the grievance appeal process unavailable to him." *Sandlin v. Poole*, 575 F. Supp.2d 484, 488 (W.D.N.Y. 2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust");

(2) Other individuals' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process." *Clarke v. Thornton*, 515 F. Supp.2d 435, 439 (S.D.N.Y. 2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden."); and

(3) When plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance." *Hairston v.*

---

("Plaintiff does not assert that Dr. Koeingsmann personally was responsible for [the failure of anyone from the Inmate Grievance Program to address plaintiff's appeal].  [However,] *Ziemba* [*v. Wezner*, 366 F.3d 161 (2d Cir. 2004)] does not require a showing that Dr. Koenigsmann is personally responsible for plaintiff's failure to complete exhaustion [in order for Dr. Koenigsmann to be estopped from asserting the affirmative defense of failure to exhaust administrative remedies], as long as someone employed by DOCS is.  If that reading of Ziemba is incorrect, however, . . . then the circumstances here must be regarded as special, and as justifying the incompleteness of exhaustion, since a decision by CORC is hardly something plaintiff could have accomplished on his own.").

*LaMarche*, 05-CV-6642, 2006 WL 2309592, at *8 (S.D.N.Y. Aug. 10, 2006).

After carefully considering the issue, the Court finds that there exists, in this action, no "special circumstances" justifying Plaintiff's failure to comply with the administrative procedural requirements.  Construed with the utmost of special leniency, Plaintiff's hearing testimony, and his counsel's cross-examination of Defendants' witnesses, raise the specter of two excuses for not having exhausted his available administrative remedies before he (allegedly) mailed his Complaint in this action on August 14, 2003: (1) that exhaustion was not possible because of the administrative procedures that DOCS has implemented regarding inmate grievances; and/or (2) that an unspecified number of unidentified corrections officers (who are not Defendants in this action) somehow interfered with the delivery of his grievance and appeals.  For example, Plaintiff testified at the exhaustion hearing that he handed his grievance and appeals to various corrections officers making rounds where he was being housed, and that, if his grievance and/or appeals were never received, it must have been because his letters were not properly delivered. (Hearing Tr. at 126-36.)

With regard to these excuses, the Court finds that, while these excuses could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations,[27] these excuses are not available to Plaintiff in the current action because, as stated in Part II.A. of this Decision and Order, the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections

---

[27]     *See*, *e.g.*, *Sandlin v. Poole*, 575 F. Supp.2d 484, 488 (W.D.N.Y. 2008) (noting that "refusal to accept or forward plaintiff's appeals . . . effectively render[s] the grievance appeal process unavailable to him").

officers with regard to the claims in question.  *See*, *supra*, Part II.A. of this Decision and Order.[28]

For all these reasons, the Court finds that Plaintiff's proffered excuse does not constitute a special circumstance justifying his failure to exhaust his available administrative remedies before filing this action.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 10) is **DISMISSED in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

Dated: March 31, 2010
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[28]    The Court notes that, even if Plaintiff did (as he testified) hand to a corrections officer for mailing a letter to the Superintendent on September 13, 2000, appealing from the IGRC's failure to decide his grievance of August 22, 2000, within nine working days (i.e., by September 5, 2000), it appears that such an appeal would have been filed two days too late under DOCS Directive 4040, which requires that appeal to be filed within four working days of the IGRC's failure to decide his grievance (i.e., by September 11, 2000).  (*See* Hearing Tr. 127-34; Hearing Ex. P-1, at 5-7 [attaching ¶¶ V.A, V.B. of DOCS Directive 4040, dated 6/8/98].)